UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
LAFAYETTE DIVISION

| | |
|---|---|
| JAMES K. SCHENKE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 4:15-cv-75 |
| v. | ) |
| | ) |
| MITCH DANIELS, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**OPINION AND ORDER**

This matter is before the court on the Motion of Defendants Daniels, Griffith, Klingerman, Rosa, Zink, and Triol to Dismiss Amended Complaint [DE 68] filed by the defendants, Mitch Daniels, Julie Griffith, Trent Klingerman, Julie Rosa, Brian Zink, and Shelley Triol, on November 4, 2016. For the following reasons, the motion is **GRANTED IN PART** and **DENIED IN PART.**

*Background*

On October 18, 2016, the plaintiff, James Schenke, filed an Amended Complaint [DE 64] against the defendants, Julie Griffin, Trent Klingerman, Julie Rosa, Shelley Triol, Brian Zink, Mitch Daniels (Purdue defendants), John Dennis, and Randy Truitt. The amended complaint has alleged that the Purdue News Service Guidelines as enforced by the Purdue defendants violates Schenke's First Amendment right to speak as a private citizen on a matter of public concern, and that the Purdue defendants retaliated against Schenke for his exercise of free speech.

Schenke was employed as a Broadcast Media Liaison by Purdue University's Office of News and Information. During the Spring and Summer of 2013, the City of Lafayette was attempting to annex certain property along the U.S. 231 corridor. The subdivision Wake Robin

Estates, where Schenke resided and was a member of the Homeowners Association, would have been annexed under the plan. Schenke spoke and wrote against the annexation and was involved in protests concerning excessive noise in Wake Robin after the opening of the U.S. 231 bypass.

The factual allegations contained in the amended complaint have alleged that Schenke began speaking out against the annexation in the Spring of 2013. Schenke spoke at the West Lafayette City Council Meeting, started an on-line petition opposing the annexation, and wrote a guest op-ed piece for the Lafayette *Journal and Courier* in which he opposed the annexation. He then appeared on local television newscasts, where he was identified as a board member of Wake Robin HOA.

On September 9, 2013, Schenke wrote a letter to the editor of the Purdue *Exponent* in an attempt to correct false statements made about the annexation opponents. This letter was not published. However, Brian Zink approached Schenke "in an apparent panic" to ask whether Schenke had written a letter to the *Exponent*. Schenke affirmed that he had, and Zink advised Schenke to withdraw the letter, stating that "if that [letter] had already run, [Schenke] would likely have been fired." Zink further informed Schenke that he must notify his supervisors and obtain permission before engaging in any media contacts, even personal ones not related to Purdue. Schenke was informed on September 10, 2013, that he did not receive the promotion that he applied for in July of 2013.

On September 17, 2013, Schenke was interviewed by a local television station regarding the noise from U.S. 231. After his television appearance, Zink informed Schenke that he must discuss what would be said in any media interactions in addition to notifying his supervisors of any interactions in advance. Zink also informed Schenke that while he could prepare his neighbors to speak to the media, he could not appear himself and that any violation of these

terms would lead to termination. On October 2, 2013, Schenke expressed frustration at not only being denied a new position but also for not being interviewed for any of the positions he had applied for. He was told by defendant Julie Griffith that "we all have track records. Perhaps this whole annexation thing was the problem."

On November 4, Schenke told Zink that he wanted to speak at an upcoming West Lafayette City Council meeting regarding the annexation plan. After repeated requests, the Purdue defendants, Brian Zink, Shelly Triol, and Trent Klingerman, held a meeting at which Schenke was told that he was allowed to address the City Council, but he was advised not to speak to the media. This meeting was the first time Schenke saw Purdue's News Service Guidelines, which the Purdue defendants claimed he violated. After the City Council meeting, a reporter approached Schenke and asked him a question, which he answered in order to explain to the reporter that he was not publically opposing a plan that Purdue had favored. Purdue had not yet expressed an official opinion on the matter, and the story that ran the next day did not imply that Schenke was publically opposing a plan that Purdue approved.

The Purdue defendants held a meeting at which Schenke was reprimanded because he violated the News Service policies, which the Purdue defendants alleged he had been warned about repeatedly. Schenke was told to read and sign the reprimand, but that no changes would be made. Schenke, after talking to a colleague, learned that he could file a grievance, which he did on November 26. At the grievance hearing, the reprimand was rescinded based on the fact that Schenke had not been aware of the guidelines at the time of his violations. Schenke no longer is employed by Purdue and was terminated because of his arrest on charges of domestic violence and public intoxication.

The Purdue defendants have moved to dismiss the amended complaint. Schenke filed a response in opposition on December 4, 2016, and the Purdue defendants filed a reply in support on December 12, 2016. On May 22, 2017, this case was reassigned to Magistrate Judge Andrew P. Rodovich upon the parties' consent under 28 U.S. C. § 636(c).

*Discussion*

**Federal Rule of Civil Procedure 12(b)(6)** allows for a complaint to be dismissed if it fails to "state a claim upon which relief can be granted." Allegations other than those of fraud and mistake are governed by the pleading standard outlined in Federal Rule of Civil Procedure 8(a)(2), which requires a "short and plain statement" to show that a pleader is entitled to relief. *See* ***Cincinnati Life Ins. Co. v. Beyrer***, 722 F.3d 939, 946 (7th Cir. 2013). The Supreme Court clarified its interpretation of the Rule 8(a)(2) pleading standard in a decision issued in May 2009. While Rule 8(a)(2) does not require the pleading of detailed allegations, it nevertheless demands something more "than an un-adorned, the-defendant-unlawfully-harmed-me accusation." ***Ashcroft v. Iqbal***, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). In order to survive a Rule 12(b)(6) motion, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" ***Iqbal***, 556 U.S. at 678 (quoting ***Bell Atlantic Corp. v. Twombly***, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)); ***Cincinnati Life Ins.***, 722 F.3d at 946 ("The primary purpose of [Fed.R.Civ.P. 8 and 10(b)] is to give defendants fair notice of the claims against them and the grounds supporting the claims.") (quoting ***Stanard v. Nygren***, 658 F.3d 792, 797 (7th Cir. 2011)); ***Peele v. Clifford Burch***, 722 F.3d 956, 959 (7th Cir. 2013) (explaining that one sentence of facts combined with boilerplate language did not satisfy the requirements of Rule 8); ***Joren v. Napolitano***, 633 F.3d. 1144, 1146 (7th Cir. 2011). This pleading standard applies to all civil matters. ***Iqbal***, 556 U.S. at 684.

The decision in *Iqbal* discussed two principles that underscored the Rule 8(a)(2) pleading standard announced by *Twombly*. *See Twombly*, 550 U.S. at 555 (discussing Rule 8(a)(2)'s requirement that factual allegations in a complaint must "raise a right to relief above the speculative level"). First, a court must accept as true only *factual* allegations pled in a complaint—"[t]hreadbare recitals of the elements of a cause of action" that amount to "legal conclusions" are insufficient. *Iqbal*, 556 U.S. at 678. Next, only complaints that state "plausible" claims for relief will survive a motion to dismiss. *Iqbal*, 556 U.S. at 678. If the pleaded facts do not permit the inference of more than a "mere possibility of misconduct," then the complaint has not met the pleading standard outlined in Rule 8(a)(2). *Iqbal*, 556 U.S. at 678–79; *see* **Brown v. JP Morgan Chase Bank**, 2009 WL 1761101, at *1 (7th Cir. June 23, 2009) (defining "facially plausible" claim as a set of facts that allows for a reasonable inference of liability). The Supreme Court has suggested a two-step process for a court to follow when considering a motion to dismiss. First, any "well-pleaded factual allegations" should be assumed to be true by the court. Next, these allegations can be reviewed to determine if they "plausibly" give rise to a claim that would entitle the complainant to relief. *Iqbal*, 556 U.S. at 678–79; **Bonte v. U.S. Bank, N.A.**, 624 F.3d 461, 465 (7th Cir. 2010). Reasonable inferences from well-pled facts must be construed in favor of the plaintiff. **Murphy v. Walker**, 51 F.3d 714, 717 (7th Cir. 1995); **Maxie v. Wal-Mart Store**, 2009 WL 1766686, at *2 (N.D. Ind. June 19, 2009) (same); **Banks v. Montgomery**, 2009 WL 1657465, at *1 (N.D. Ind. June 11, 2009) (same).

A complaint that lacks organization and coherence so that it is too confusing to understand the factual basis of the wrongful conduct also is subject to dismissal. ***Cincinnati Life Ins.***, 722 F.3d at 946. The court assesses this by considering whether it can make out the essence of the claims. ***Cincinnati Life Ins.***, 722 F.3d at 946. A complaint is not unintelligible simply

5

because it contains repetitive and irrelevant matter. *Cincinnati Life Ins.*, 722 F.3d at 946. "Rather, we have found complaints wanting when they present a 'vague, confusing, and conclusory articulation of the factual and legal basis for the claim and [take] a general "kitchen sink" approach to pleading the case.' . . . [D]ismissal is the appropriate remedy for district courts presented with 'a bucket of mud.'" *Cincinnati Life Ins.*, 722 F.3d at 946–47 (quoting *Stanard*, 658 F.3d at 798).

Title 42 U.S.C. § 1983 provides a "federal cause of action for the deprivation, under color of state law, of a citizen's rights, privileges, or immunities secured by the Constitution and laws of the United States...." *Livadas v. Bradshaw*, 512 U.S. 107, 132, 114 S.Ct. 2068, 2082, 129 L.Ed.2d 93 (1994). Section 1983 does not itself create substantive rights, but "it acts as an instrument for vindicating federal rights conferred elsewhere." *Spiegel v. Rabinovitz*, 121 F.3d 251, 254 (7th Cir. 1997). In order to state a valid claim for relief under § 1983, the plaintiff must establish that he was deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." *Gomez v. Toledo,* 446 U.S. 635, 640, 100 S. Ct. 1920, 64 L. Ed. 2d 572 (1980).

First, the Purdue defendants have argued that the amended complaint has failed to allege any unconstitutional abridgement of free speech. "Government employers, like private employers, need a significant degree of control over their employees' words and actions; without it, there would be little chance for the efficient provision of public services." *Garcetti v. Ceballos,* 547 U.S. 410, 418, 126 S. Ct. 1951, 164 L.Ed.2d 689 (2006). However, "public employees do not surrender all their First Amendment rights by reason of their employment. Rather, the First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." *Garcetti*, 547 U.S. at 417. The issue

then becomes finding "a balance between the interests of the employee, as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering v. Board of Education*, 391 U.S. 563, 568, 88 S. Ct. 1731, 20 L. Ed.2d 811 (1968).

The Purdue defendants have argued that Schenke's statements to the press were not protected speech. The Purdue defendants contend that Schenke's statements were pursuant to his official duties. Therefore, when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes. *Garcetti*, 547 U.S. at 421. The Purdue defendants have alleged that any statements made to the media were made in conjunction with Schenke's job as Broadcast Media Liaison, and therefore are not protected speech. However, matters of public concern are ones in which "free and open debate is vital to informed decision-making by the electorate." *Pickering,* 391 U.S. at 571-72. Schenke's statements regarding the annexation may be found to be such a concern, as the annexation involved several subdivisions and garnered much media attention.

When "employees are speaking as citizens about matters of public concern, they must face only those speech restrictions that are necessary for their employers to operate efficiently and effectively." *Garcetti,* 547 U.S. at 411. The Purdue defendants contend that Purdue was concerned with Schenke appearing as a spokesman on behalf of Purdue. However, Schenke has argued that at the time that he was speaking against the annexation, Purdue had neither opposed nor endorsed the annexation. Further, Schenke has indicated that at no point was he identified as a Purdue employee, but rather as a member of the Wake Robin Homeowner's Association. Therefore, he contends that the speech restrictions imposed on him were not necessary or permissible.

7

The Purdue defendants have argued that the amended complaint has failed to allege any speech restrictions that were outside of Schenke's professional duties. However, the amended complaint has alleged that Schenke had to obtain permission to speak to the media about anything, including personal issues unrelated to Purdue, and discuss those interactions in advance. He was told that any violation of this would result in disciplinary action and could lead to termination. Schenke has indicated that his professional duties did not include being a spokesman for Purdue. As a Broadcast Media Liaison, Schenke indicated that he did not communicate Purdue's position on matters to the public, rather he obtained media coverage for Purdue's activities. Therefore, Schenke contends that his suppressed speech was related to the proposed annexation of his home, not his professional duties.

The amended complaint has alleged that the Purdue defendants retaliated against Schenke for exercising his right to speak as a citizen on a matter of public importance. To prevail on a First Amendment retaliation claim, Schenke must show that: (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was "at least a motivating factor" in the defendants' decision to take the retaliatory action. ***Bridges v. Gilbert,*** 557 F.3d 541, 546 (7th Cir. 2009) (quoting ***Massey v. Johnson***, 457 F.3d 711, 716 (7th Cir. 2006)).

Schenke has shown that he engaged in activity that was protected by the First Amendment. Next, Schenke has plausibly alleged that he suffered a deprivation that likely would deter First Amendment speech. Despite the speech restrictions imposed on Schenke, he continued to speak out against the annexation, however, the legal standard is objective. Schenke must show that the retaliatory activities would "deter a person of ordinary firmness" from exercising First Amendment activity in the future. ***Bridges***, 557 F.3d at 546. Schenke has

indicated that he was threatened, muzzled, interrogated, reprimanded, denied a promotion, and professionally marginalized for speaking against the annexation.  Therefore, he has argued that a reasonable person may be deterred from further involvement in annexation, noise abatement, or other issues supported by Mayor Dennis or Representative Truitt.  It is plausible that given the restrictions that were placed on Schenke's speech, a "person of ordinary firmness" may have been deterred from future engagements with the media.

Finally, Schenke must show that his First Amendment activity was "at least a motivating factor" in the defendants' decision to take the retaliatory action.  ***Bridges v. Gilbert,*** 557 F.3d 541, 546 (7th Cir. 2009) (quoting ***Massey v. Johnson***, 457 F.3d 711, 716 (7th Cir. 2006)).  Schenke "need only show that a violation of his First Amendment rights was a 'motivating factor' of the harm he is complaining of, and that if he shows this the burden shifts to the defendant to show that the harm would have occurred anyway." ***Greene v. Doruff***, 660 F.3d 975, 977 (7th Cir. 2011) (citing ***Spiegla v. Hull***, 371 F.3d 928, 941-43 (7th Cir. 2004)).  A motivating factor "does not amount to a but-for factor or to the only factor, but is rather a factor that motivated the defendant's actions." ***Spiegla v. Hull***, 371 F.3d at 942.  Circumstantial proof, such as the timing of events, may be sufficient to establish the defendants' retaliatory motive.  ***Culver v. Gorman & Co.,*** 416 F.3d 540, 545–46 (7th Cir. 2005).

Schenke has alleged that on September 9, 2013, he wrote a letter to the editor of the Purdue *Exponent* in an attempt to correct false statements made about the annexation opponents.  Zink advised Schenke to withdraw the letter, stating that "if that [letter] had already run, [Schenke] would likely have been fired."  Zink further informed Schenke that he must notify his supervisors and obtain permission before engaging in any media contacts, even personal ones not related to Purdue.  Schenke has alleged that when he expressed his frustration about not being

9

given an interview for any of the positions for which he had applied, defendant Griffith stated, "Well, Jim, we all have track records. Perhaps this whole annexation thing was the problem." Reasonable inferences from well-pled facts must be construed in favor of the plaintiff. *Murphy v. Walker*, 51 F.3d 714, 717 (7th Cir. 1995). Therefore, Schenke has plead factual content that allows the court to reasonably infer that the Purdue defendants' retaliation was based on his First Amendment activity.

The defendant, Mitch Daniels, has argued that there is no Section 1983 liability for his alleged inaction. The amended complaint has alleged that Schenke appealed to Daniels about the restrictions that Purdue had placed on his speech, however, Daniels refused to take any action to correct the situation. The Purdue defendants have argued that non-involvement of the University President is not actionable. Courts have rejected § 1983 claims based on *respondeat superior* liability. *See* ***Cygnar v. City of Chicago,*** 865 F.2d 827, 847 (7th Cir. 1989) ("there is no doctrine of superior's liability in § 1983 actions; instead, the official must actually have participated in the constitutional wrongdoing). However, there is a personal responsibility requirement, "an official satisfies the personal responsibility requirement ... if the conduct causing the constitutional deprivation occurs at his direction or with his knowledge and consent." ***Smith v. Rowe,*** 761 F.2d 360, 369 (7th Cir. 1985) (internal quotation marks omitted). Put another way, the defendant "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye." ***Gentry v. Duckworth,*** 65 F.3d 555, 561 (7th Cir. 1995). "In short, some causal connection or affirmative link between the action complained about and the official sued is necessary for § 1983 recovery." ***Gentry,*** 65 F.3d at 561.

Schenke has indicated that he made Daniels aware of the restrictions that had been placed on his speech and that Daniels chose not to any take action to correct the situation. Therefore, in

taking the complaint in the light most favorable to Schenke, he has established casual connection between the misconduct alleged and Daniels, which is enough to state a claim.

Schenke has conceded that he does not have an actionable claim against the defendant, Julie Rosa. The defendant, Julie Rosa, individually, and in her official capacity as Assistant Vice-President of Strategic Communications, is **DISMISSED** from this matter.

Count Five of the Amended Complaint alleges governmental liability against Purdue University. Purdue University was not named as a party. Also, the Supreme Court of Indiana has expressly held Purdue University to be "an educational institution belonging to the State of Indiana." *Russell v. Tr. of Purdue Univ.,* 201 Ind. 367, 385, 168 N.E. 529, 535 (1929). Courts in the Seventh Circuit have held that Purdue University is an arm of the state. *Williamson v. Indiana Univ.,* 345 F.3d 459, 463 (7th Cir. 2003); *Power v. Summers,* 226 F.3d 815, 818 (7th Cir. 2000); *Kaimowitz v. Bd. of Tr. of Univ. of Illinois,* 951 F.2d 765, 767 (7th Cir. 1991). Therefore, Count Five of the Amended Complaint is **DISMISSED.** Further, as conceded by Schenke, his requested relief, as it applies to his promotion and to the establishment of a "First Amendment Center" by Purdue is **DISMISSED.**

Schenke also has indicated that since the filing of the Amended Complaint and the defendants' Motion to Dismiss he was terminated by Purdue University, therefore, his prayer for injunctive relief against Purdue University and its officers, employees, and agents is moot. In light of the prayer for injunctive relief being moot, the official capacity claims against the remaining Purdue defendants are **DISMISSED.**

Based on the foregoing, the Motion of Defendants Daniels, Griffith, Klingerman, Rosa, Zink, and Triol to Dismiss Amended Complaint [DE 68] is **GRANTED IN PART** and **DENIED IN PART.**

ENTERED this 29th day of September, 2017.

/s/ Andrew P. Rodovich
United States Magistrate Judge