UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
LAFAYETTE DIVISION

| | |
|---|---|
| JAMES K. SCHENKE, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 4:15-cv-75 ) |
| MITCH DANIELS, *et al.,* | ) ) ) |
| Defendants. | ) |

**OPINION AND ORDER**

This matter is before the court on the Motion for Summary Judgment [DE 100], and the Motion to Strike Plaintiff's Designated Evidence [DE 112] filed by the defendants, Mitch Daniels, Julie K. Griffith, Trent Klingerman, Brian Zink, and Shelley Triol, on March 16, 2018 and July 16, 2018. For the following reasons, the Motion for Summary Judgment [DE 100] is **GRANTED**, and the Motion to Strike Plaintiff's Designated Evidence [DE 112] is **GRANTED in part and DENIED in part.**

*Background*

The plaintiff, James K. Schenke, has pursued two causes of action pursuant to 42 U.S.C. § 1983 against the defendants. First, he asserts that the Purdue News Service Guidelines have chilled his right to speak as a private citizen on matters of public concern in violation of the First Amendment. Second, he asserts that the defendants deprived him of his constitutionally-protected right to speak as a private citizen on matters of public concern, as guaranteed by the First and Fourteenth Amendments, by requiring prior approval and by retaliating against him when he spoke on matters of public concern.

Schenke was employed as a Broadcast Media Liaison by Purdue University's Office of News and Information. As a member of Purdue's News Service team, he was subject to the News Service Guidelines Policies and Procedures. The Guidelines included the following provisions:

> In the absence of the vice president for university relations and the News Service director, members of the News Service may have occasion to become spokespeople for the university. Staff members are expected to be familiar with the University's position when speaking on Purdue-related issues to the media or public. They should refrain from publicly expressing personal views on University issues without written approval from the director and/or vice president. This includes, but is not limited to, letters to the editor, media interviews, and public meetings.
>
> In matters that do not relate to Purdue, a member of the News Service staff must avoid any implication that the opinion he or she is expressing is also the opinion of the University.

(DE 100-5, Ex. E).

During the Spring and Summer of 2013, the City of West Lafayette was attempting to annex certain property along the U.S. 231 corridor. Schenke personally opposed the initial annexation plan because it included the subdivision where he lived, Wake Robin Estates. He indicated that "[i]t was quite clear in the public discourse that annexation was dead on arrival if Purdue did not allow it to proceed." (Schenke Dep., at 218:4-8). "It was my presumption that [Purdue was] on board with the annexation by the time I joined the discourse." (Schenke Dep., at 218:19-219:1).

Schenke spoke out against the annexation by writing newspaper stories, writing letters to the editor, granting interviews with reporters, and speaking at a City Council meeting. On September 9, 2013, Schenke wrote a letter to the editor of the Purdue *Exponent* attempting to correct certain statements made about the annexation opponents. However, he did not submit the

letter to his supervisor first. At the time Schenke wrote the letter, his stance was contrary to the University's position on the annexation. Schenke also was interviewed by a local television station about the noise from U.S. 231. Schenke was advised by the defendant, Brian Zink, to conduct himself in strict accordance with the News Service Policy.

On November 4, 2013, Schenke notified Zink of his intention to speak at an upcoming West Lafayette City Council meeting about the scaled-back annexation plan. At the time of the City Council meeting, the annexation was focused on the University and did not include Schenke's neighborhood. (Zink Decl. ¶ 4). The defendants held a meeting to discuss the News Service Guidelines with Schenke because the media was expected to be present at the City Council meeting. Schenke voluntarily shared his planned remarks. He was advised of the distinction between speaking for the University and as a private citizen by the defendant, Trent Klingerman. (Klingerman Decl. ¶ 3). Additionally, the defendant, Shelley Triol, advised Schenke of the importance that he not make comments that could be misconstrued that he was speaking on behalf of Purdue. (Triol Decl. ¶ 3). Schenke spoke at the City Council meeting. He later was approached by a reporter for the *Exponent*. The *Exponent* article quoted Schenke as speaking negatively about the mayor, John Dennis.

On November 11, 2013, Schenke received a written reprimand for non-compliance with the Guidelines. He filed a grievance on November 26, 2013, and at the grievance hearing on January 8, 2014, he claimed a misapplication of the Guidelines. The defendant, Shelley Triol, rescinded the reprimand. Schenke no longer is employed by Purdue. He was terminated in 2016 following an arrest.

Schenke has argued that his media dealings throughout 2013 were not part of his official duties. Therefore, he was speaking as a private citizen on a matter of public importance. Thus,

Schenke contends that the defendants burdened his free speech rights by retaliating against him for exercising his First Amendment rights when he applied for Purdue's vacant "Director of Public Information" position. The defendants denied Schenke an interview for the position. Schenke learned on September 10, 2013, a day after he sent his letter to the editor of the *Exponent* that he had not been selected for the position.

The defendants have moved for summary judgment on this matter. Schenke filed a response in opposition on June 26, 2018, and the defendants filed a reply on July 16, 2018. The defendants also have moved to strike portions of Schenke's designated evidence. Schenke did not file a response to the motion to strike, and the time to do so has passed.

*Discussion*

Before addressing the defendants' motion for summary judgment, the court first must determine what evidence it may consider by addressing the defendants' motion to strike. The defendants have moved to strike evidence designated in Schenke's summary judgment appendix and further strike any reference to such materials in his response in opposition to the motion for summary judgment. Schenke did not respond to the motion to strike.

First, the defendants have moved to strike the "Declaration Under Oath of James K. Schenke" [DE 109-2] because it is unsigned. A declaration used to oppose summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the . . . declarant is competent to testify on the matters stated." **Federal Rule of Civil Procedure 56(c)(4).** A motion to strike has merit where the contested declaration is unsigned and does not comply with Federal Rule of Civil Procedure 56. *See* **Sellers v. Henman,** 41 F.3d 1100, 1101 (7th Cir. 1994) (noting that unsigned affidavits are properly accorded "no evidentiary

significance"). Since Schenke failed to sign the declaration, the court strikes the Declaration Under Oath of James K. Schenke [DE 109-2].

The defendants next move to strike docket entries 109-3, 109-4, 109-5, 109-6, 109-7, 109-8, and 109-9 because they are unauthenticated, lack foundation of personal knowledge, and contain inadmissible hearsay. The article from *Journal and Courier* Editorial and transcripts from WLFI-TV are unauthenticated, and thus inadmissible. Accordingly, the court strikes docket entries 109-3, 109-4, 109-5, 109-6, 109-7, 109-8, and 109-9.

The defendants move to strike portions of Schenke's deposition testimony because it would not be admissible as evidence at trial. **Federal Rule of Civil Procedure 56(c)(2)** provides that "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Specifically, the defendants have moved to strike Schenke's Designation A.8 and A.9 contained in his response in opposition which states, "Zink, Triol, and Klingerman 'didn't want [Schenke] to speak at all at the City Council[.]'" (Schenke Dep., at 254:5-6). Schenke may testify to his own state of mind and what he heard someone say. However, he cannot testify to another's state of mind. The opinions or conclusions of Schenke concerning the state of mind of Zink, Triol, and Klingerman are not admissible. Therefore, the court strikes Designation A.8 and A.9.

Schenke also has moved to strike Schenke's Designation B.4 which states, "Zink specifically mentioned that the editor (of the *Journal & Courier*) had asked the Mayor [of West Lafayette, John Dennis ("Dennis")] to engage in a counter-point with [Schenke], . . . [a]nd rather than do that Dennis had called Vice-President Griffith to complain about [Schenke's] First Amendment activities." (Schenke Dep., at 87:14-19). The defendants assert that the above statements by the "editor" and "John Dennis" are hearsay. A party may not rely upon

5

inadmissible hearsay in a deposition to oppose a motion for summary judgment. ***Bombard v. Fort Wayne Newspapers, Inc.,*** 92 F.3d 560, 562 (7th Cir. 1996). Hearsay is defined as a statement that is made outside of "the current trial or hearing" that "a party offers in evidence to prove the truth of the matter asserted in the statement." **Federal Rule of Evidence 801(c).** The court finds that these statements are not offered for their truth, and therefore are not considered hearsay. Accordingly, the motion to strike Designation B.4 is denied.

The defendants move to strike Schenke's Designation B.11 which states, "[t]he only reason communicated to Schenke by his superiors concerning why he did not get the POI position is that it was because of Schenke's political activity involving annexation." (Schenke Dep., at 157:22-25). The defendants have indicated that the statement lacks foundation because it does not identify the superiors. For foundational purposes, statements that refer to conversations should include information regarding when and where the conversation occurred, who was present during the conversation, and who said what to whom. ***Houk v. Village of Oak Lawn,*** No. 86 C 139, 1987 WL 7498, *2 (N.D. Ill. Feb. 26, 1987). The challenged declaration lacks the required specificity. Accordingly, the court strikes the statement in Designation B.11.

The defendants next move to strike Schenke's Designation A.2 which states, "[a]t the time Schenke engaged in these activities, Purdue University had not expressed an official position on the issues of annexation or noise abatement, and did not do so until at least January 28, 2014, when the Board of Trustees approved a resolution authorizing Purdue 'not to remonstrate in connection with the proposed Annexation.'" (Am. Compl. ¶¶ 13, 23, 38). Schenke has relied on the Amended Complaint. The non-moving party may not rest upon mere allegations in the pleadings but must set forth specific facts sufficient to raise a genuine issue for trial. ***Celotex Corp. v. Catrett,*** 477 U.S. 317, 324, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

Therefore, Schenke has failed to rely on designated evidence that is sufficient to raise a genuine issue for trial. Accordingly, the court strikes Designation A.2.

The defendants move to strike Schenke's Designations B.5, B.12, and B.49. These designations describe writings that are not in evidence. These designations are inadmissible because Schenke's statements violate the best evidence rule which requires that an original writing must be produced to prove its contents, except as otherwise provided by the Rules or by Acts of Congress. **Federal Rule of Evidence 1002.** The court strikes Designations B.5, B.12, and B.49.

Finally, the defendants have moved to strike Schenke's Designation B.17 which states, "Schenke was speaking against the annexation in the western suburbs neighborhood." (Schenke Dep., at 196:18-19). The defendants contend that the statement lacks any foundation as to time, place, manner, or medium and is conclusory. The court finds that the statement is not conclusory and denies the motion to strike as to Designation B.17.

Pursuant to **Federal Rule of Civil Procedure 56(a),** summary judgment is proper only if it is demonstrated that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *Garofalo v. Vill. of Hazel Crest*, 754 F.3d 428, 430 (7th Cir. 2014); *Kidwell v. Eisenhauer*, 679 F.3d 957, 964 (7th Cir. 2012); *Stephens v. Erickson*, 569 F.3d 779, 786 (7th Cir. 2009). A fact is material if it is outcome determinative under applicable law. The burden is upon the moving party to establish that no material facts are in genuine dispute, and any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160, 90 S. Ct. 1598, 1610, 26 L. Ed. 2d 142, 155 (1970); *Stephens*, 569 F.3d at 786. When the movant has met its burden, the opposing party

cannot rely solely on the allegations in their pleadings but must "point to evidence that can be put in admissible form at trial, and that, if believed by the fact-finder, could support judgment in his favor." ***Marr v. Bank of America, N.A.,*** 662 F.3d 963, 966 (7th Cir. 2011); *see also* ***Steen v. Myers,*** 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting ***Hammel v. Eau Galle Cheese Factory,*** 407 F.3d 852, 859 (7th Cir. 2005) (summary judgment is "the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events.")). The non-moving party cannot rely on conclusory allegations. ***Smith v. Shawnee Library System,*** 60 F.3d 317, 320 (7th Cir. 1995). Failure to prove an essential element of the alleged activity will render other facts immaterial. ***Celotex,*** 477 U.S. at 323; ***Filippo v. Lee Publications, Inc.,*** 485 F. Supp. 2d 969, 972 (N.D. Ind. 2007) (the non-moving party "must do more than raise some metaphysical doubt as to the material facts; he must come forward with specific facts showing a genuine issue for trial.").

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences in favor of that party. ***Anderson v. Liberty Lobby, Inc.***, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202, 212 (1986); ***McDowell v. Vill. of Lansing***, 763 F.3d 762, 764, 765 (7th Cir. 2014). In deciding a motion for summary judgment, the trial court must determine whether the evidence presented by the party opposed to the summary judgment is such that a reasonable jury might find in favor of that party after a trial. ***Anderson,*** 477 U.S. at 248; ***Cung Hnin v. Toa, LLC***, 751 F.3d 499, 504 (7th Cir. 2014); ***Wheeler v. Lawson***, 539 F.3d 629, 634 (7th Cir. 2008).

Title 42 U.S.C. § 1983 provides a "federal cause of action for the deprivation, under color of state law, of a citizen's rights, privileges, or immunities secured by the Constitution and laws of the United States. . . " ***Livadas v. Bradshaw***, 512 U.S. 107, 132, 114 S. Ct. 2068, 2082, 129

L. Ed. 2d 93 (1994). Section 1983 does not itself create substantive rights, but "it acts as an instrument for vindicating federal rights conferred elsewhere." *Spiegel v. Rabinovitz*, 121 F.3d 251, 254 (7th Cir. 1997). To prevail on a § 1983 claim, Schenke must prove that: (1) he engaged in constitutionally protected speech; (2) the defendants, as public officials, engaged in adverse conduct against him; and (3) the defendants were motivated, at least in part, by his protected speech. *Springer v. Durflinger*, 518 F.3d 479, 483 (7th Cir. 2008).

"The First Amendment, applicable to the states through the Fourteenth Amendment, prohibits a public employer from retaliating against an employee for engaging in protected speech." *Milwaukee Deputy Sheriff's Ass'n v. Clarke*, 574 F.3d 370, 376 (7th Cir. 2009). "To establish a claim for retaliation in violation of the First Amendment, a public employee must prove that: (1) his speech was constitutionally protected, (2) he has suffered a deprivation likely to deter speech, and (3) his speech was at least a motivating factor in the employer's action." *Swetlik v. Crawford*, 738 F.3d 818, 825 (7th Cir. 2013) (citing *Peele v. Burch*, 722 F.3d 956, 959 (7th Cir. 2013)).

A public employee's speech is constitutionally protected only if it: (1) was made as a private citizen; and (2) addressed a matter of public concern. *Kubiak v. City of Chicago,* 810 F.3d 476, 481 (7th Cir. 2016). If the employee fails to establish either of these elements, "the employee has no First Amendment cause of action based on his or her employer's reaction to the speech." *Garcetti v. Ceballos,* 547 U.S. 410, 418, 126 S. Ct. 1951, 164 L. Ed. 2d 689 (2006). However, if the employee establishes both elements, the court engages in the *Pickering* balancing test. For speech to be protected under *Pickering*, "the employee's interest in making the speech must outweigh the employer's interest in 'promoting the efficiency of the public services it performs through its employees.'" *Pickering v. Bd. of Ed. of Twp. High Sch. Dist.*

9

*205, Will Cnty., Ill.*, 391 U.S. 563, 568, 88 S. Ct. 1731, 20 L. Ed. 2d 811 (1968). "The determination of whether speech is constitutionally protected is a question of law." *Kubiak*, 810 F.3d at 481.

"Speech deals with matters of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community, or when it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public." *Snyder v. Phelps*, 562 U.S. 443, 453, 131 S. Ct. 1207, 179 L. Ed. 2d 172 (2011) (citations and internal quotation marks omitted). When undertaking public-concern inquiries, the court must examine the "content, form, and context" of the statements at issue. *Craig v. Rich Twp. High Sch. Dist. 277*, 736 F.3d 1110, 1115–16 (7th Cir. 2013) (quoting *Connick v. Myers*, 461 U.S. 138, 147–48, 103 S. Ct. 1684, 75 L. Ed. 2d 708 (1983)). The defendants have not disputed that Schenke's speech dealt with a matter of public concern.

However, in order for a public employee to raise a successful First Amendment claim, he must have spoken in his capacity as a private citizen and not as an employee. "[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes." *Garcetti,* 547 U.S. at 421. Determining what falls within the scope of an employee's duties is a practical exercise that focuses on "the duties an employee actually is expected to perform." *Morales v. Jones,* 494 F.3d 590, 596 (7th Cir. 2007) (quoting *Garcetti,* 547 U.S. at 424-25). This inquiry is not limited to an employee's "core" job functions, but looks to "whether an 'employee's expressions were made pursuant to official responsibilities.'" *Spiegla v. Hull*, 481 F.3d 961, 966 (7th Cir. 2007) (quoting *Garcetti*, 547 U.S. at 424 (internal alteration omitted)).

Schenke has argued that he was speaking as a private citizen when he addressed the media throughout 2013. He contends that his media dealings were not part of his official duties. Additionally, he contends that he did not oppose any legitimate interest Purdue may have had and that Purdue had no reasonable basis to suppress his comments.

Schenke asserts that his media dealings addressed the annexation of his subdivision, Wake Robin Estates, and other "far-western" subdivisions and that he did not address the issue of the annexation of the Purdue campus. Schenke has indicated that while engaging in media activities he never was identified as a Purdue employee, rather as a member of the Wake Robin HOA Board. Moreover, Schenke asserts that he was unaware that the annexation was a University issue or that Purdue had an official position on the annexation issue until he was reprimanded in November 11, 2013. However, contrary to that assertion Schenke admitted in his deposition that "[i]t was his presumption that [Purdue was] on board with the annexation by the time [he] joined the discourse." (Schenke Dep., at 218:19-219:1).

As Broadcast Media Liaison, Schenke was to produce and market public relations pieces involving various Purdue personnel and activities. He described his employment as "convinc[ing] the news media" to use Purdue spokespeople " to get good publicity for Purdue." He also described the scope of his employment as "a 24-7 job." (Schenke Dep., at 109:4-8). Schenke used his Purdue email account for all his political activity in 2013. Specifically, he submitted a guest newspaper column in opposition to the annexation from his Purdue email account. (Schenke Dep., at 219:2-7).

It was within Schenke's official duties to correspond with the media. As an individual who works in the media department, soliciting publicity for Purdue, his anti-annexation media dealings were "intimately connected" with his job. Engaging in media dealings that consisted of

writing letters to editors, speaking at a city council meeting, and participating in interviews, *etc.*, all could be considered within his official duties. Even though his speech concerned an issue that personally affected him, his media dealings were within the scope of his employment as a media liaison.

Schenke's latest contention is that he obtained news coverage for Purdue, rather than acting as a spokesman on behalf of Purdue, so his media dealings were not grounded in his professional duties. This argument is too narrow of a reading of *Garcetti*. Moreover, the Purdue News Service Guidelines required Schenke to refrain from publicly expressing personal views on University issues without written approval from the director and/or vice president. Schenke was under the presumption that Purdue supported the annexation. Accordingly, it was part of Schenke's job to refrain from publicly expressing views that were not authorized by Purdue.

The court, in considering the evidence and Schenke's broad self-description of his employment as a Broadcast Media Liaison, concludes that he was speaking as a public employee, not as a private citizen. Therefore, the court need not consider the balancing called for in *Pickering*. Additionally, the court need not consider whether the defendants are entitled to qualified immunity. Schenke has not presented any argument to the defendants' qualified immunity defense. Since Schenke's speech was not entitled to First Amendment protection, the defendants are entitled to summary judgment as a matter of law on Schenke's First Amendment claims.

However, assuming *arguendo* that Schenke's speech was not pursuant to his official duties, the court will undergo the balancing test in *Pickering*. The court must balance the "interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it

12

performs through its employees." *Pickering,* 391 U.S. at 568.  The court considers the following factors in balancing an employee's free-speech interests against an employer's management interests:

> (1) whether the speech would create problems in maintaining discipline or harmony among co-workers; (2) whether the employment relationship is one in which personal loyalty and confidence are necessary; (3) whether the speech impeded the employee's ability to perform her responsibilities; (4) the time, place, and manner of the speech; (5) the context in which the underlying dispute arose; (6) whether the matter was one on which debate was vital to informed decision making; and (7) whether the speaker should be regarded as a member of the general public.

*Greer v. Amesqua*, 212 F.3d 358, 371 (7th Cir. 2000); *see also Graber v. Clarke*, 763 F.3d 888, 896 (7th Cir. 2014) (noting that the seven factors need not all be addressed in turn).

First, Schenke's speech had the potential to create problems in maintaining harmony and discipline.  A showing of actual disruptiveness is not required; "a government employer is allowed to consider 'the potential disruptiveness' of the employee's speech." *Kokkinis v. Ivkovich,* 185 F.3d 840, 846 (7th Cir. 1999).  Allowing Schenke to violate the Guidelines had the potential to undermine the defendants' ability to maintain authority and discipline.  Next, Schenke's employment with Purdue was one where personal loyalty and confidence were necessary.  Schenke acknowledged that when he spoke publicly he was required to communicate Purdue's position on whatever topic he was addressing.  Also, Schenke's speech impeded on his ability to perform his responsibilities.  He indicated that he conducted anti-annexation campaigning while at work, as well as sending emails from his Purdue account during the workday.  In addition, the time, place, and manner of Schenke's speech generally was inappropriate.  Schenke indicated that his job was 24-7, therefore he was engaging in anti-annexation speech while at work.

"Government employers, like private employers, need a significant degree of control over their employees' words and actions; without it, there would be little chance for the efficient provision of public services." *Garcetti,* 547 U.S. at 418. When assessing this balance, "[t]he initial, and often determinative, question is whether the speech interferes with the employee's work or with the efficient and successful operation of the office." *Knapp v. Whitaker,* 757 F.2d 827, 842 (7th Cir. 1985). The court has found that Schenke's conduct interfered with his ability to perform his work responsibilities. Schenke was engaging in anti-annexation speech during the workday. Also, by allowing him to violate the Guidelines, it had the potential to disrupt the workplace. After consideration of the *Pickering* factors, the court concludes that the factors weigh in favor of the defendants.

Moreover, the court briefly will address Schenke's other arguments relating to his retaliation claim. Schenke has not provided evidence of retaliatory intent by any of the defendants. He has not put on any evidence of a connection between his speech and the alleged retaliation. The evidence indicates that the defendants had not discussed with Schenke his public actions concerning the annexation prior to him being notified that he would not be interviewed for the promotion of Public Information Officer. Also, he has not presented any evidence that the defendants had reviewed his application in the one day between him writing the letter to the editor of the *Exponent* and receiving notice that he would not be interviewed for the position or that the defendants were even aware of the letter to the editor of the *Exponent*.

The defendants contend that Schenke had no experience as a supervisor or designated spokesman and had overt hostility toward the University president. Therefore, he was a weak candidate for the position. Additionally, Schenke has failed to designate evidence that the named defendants took part in determining the finalists for the Public Information Officer position. The

record does not contain any evidence of whom Purdue tasked to choose the finalists for the interview. Therefore, Schenke has failed to show that his First Amendment activity was a motivating factor in the defendants' decision to take retaliatory action.

Finally, Schenke has maintained that the Guidelines amount to a prior restraint on his speech. The term "prior restraint" is used to describe "administrative and judicial orders *forbidding* certain communications when issued in advance of the time that such communications are to occur." **Alexander v. United States**, 509 U.S. 544, 550, 113 S. Ct. 2766, 125 L. Ed. 2d 441 (1993). The court first must determine whether the Guidelines applied to speech that is protected by the First Amendment. See **United States v. Nat'l Treasury Employees Union,** 513 U.S. 454, 465–66, 115 S. Ct. 1003, 130 L. Ed. 2d 964 (1995); **Crue v. Aiken,** 370 F.3d 668, 678 (7th Cir. 2004).

The News Service Guidelines included the following provisions:

> In the absence of the vice president for university relations and the News Service director, members of the News Service may have occasion to become spokespeople for the university. Staff members are expected to be familiar with the University's position when speaking on Purdue-related issues to the media or public. They should refrain from publicly expressing personal views on University issues without written approval from the director and/or vice president. This includes, but is not limited to, letters to the editor, media interviews, and public meetings.
>
> In matters that do not relate to Purdue, a member of the News Service staff must avoid any implication that the opinion he or she is expressing is also the opinion of the University.

The News Service Guidelines do not constitute a prior restraint because they do not restrict any speech protected by the First Amendment. The Guidelines restrict speech on University issues, and thus fall within the professional duties of the employee. "[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as

citizens for First Amendment purposes." *Garcetti,* 547 U.S. at 421. "When someone who is paid a salary so that she will contribute to an agency's effective operation begins to do or say things that detract from the agency's effective operation, the government employer must have some power to restrain her." *Waters v. Churchill,* 511 U.S. 661, 675, 114 S. Ct. 1878, 1888, (U.S. 1994). Additionally, without prepublication review Purdue would be powerless to prevent damage to its reputation. *See Zook v. Brown,* 865 F.2d 887, 891 (7th Cir. 1989).

Additionally, the Guidelines provide that when a News Service employee speaks about a matter that does not relate to Purdue, the employee must ensure that he coveys that he is speaking as a private citizen, not on behalf of Purdue. This provision does not limit an employee from speaking, rather it ensures that the views of the employee are not attributed to Purdue. Thus, the Guidelines only restrain speech related to an employee's official duties. The Supreme Court has made clear is not protected by the First Amendment. *See Garcetti,* 547 U.S. at 421–22.

Schenke has not challenged the constitutionality of the Guidelines on their face. Rather, he has claimed that the Guidelines as applied to him were unconstitutional. "An as-applied challenge is one that charges an act is unconstitutional as applied to a plaintiff's specific activities even though it may be capable of valid application to others." *Surita v. Hyde*, 665 F.3d 860, 875 (7th Cir. 2011). Schenke asserts that by applying the Guidelines to him as though he was an actual spokesman for Purdue, the defendants violated his First Amendment rights. Schenke has not shown any evidence that the defendants misapplied the Guidelines according to their terms. Moreover, Schenke's media dealings were within the scope of his employment and therefore were not protected from the application of the Guidelines.

Based on the foregoing reasons, the Motion for Summary Judgment [DE 100] is **GRANTED**, and the Motion to Strike Plaintiff's Designated Evidence [DE 112] is **GRANT in part and DENIED in part.**

The defendants, Julie Griffith and Trent Klingerman, have asserted a counterclaim against the plaintiff, James Schenke. The counterclaim is purely a state law issue. Accordingly, the court **ORDERS** the counterclaimants to brief whether this court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the counterclaim within 14 days of this Opinion and Order.

ENTERED this 15th day of March, 2019.

/s/ Andrew P. Rodovich  
United States Magistrate Judge